El Pueblo de Puerto Rico, demandante y apelado, *v.* Héctor R. Torres, acusado y apelante.

Núm. 9083.—*Sometido:* Febrero 20, 1942. *Resuelto:* Marzo 11, 1942.

*R. Muñoz Ramos,* abogado del apelante; *Hon. Procurador General George A. Malcolm, R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

El Juez Asociado Señor Todd, Jr., emitió la opinión del tribunal.

Héctor R. Torres fué acusado ante la Corte de Distrito de Ponce por una infracción a la Ley núm. 63, para prohibir la venta, almacenaje o transporte de alimentos y drogas o medicinas adulterados o falsamente rotulados o que sean venenosos o perjudiciales a la salud, y para otros fines, aprobada el 28 de abril de 1931 (pág. 415). Dicha corte lo declaró culpable y condenó a pagar una multa de $25 y en defecto de su pago a sufrir un día de cárcel por cada dólar

que dejare de pagar, más las costas, y apela para ante esta corte alegando que la corte inferior cometió error al declarar sin lugar la excepción perentoria de que la denuncia no aduce hechos constitutivos de delito y al concluir que la ley y los hechos estaban en contra del acusado y al condenar a éste como lo condenó.

La acusación formulada en este caso dice así:

"El Fiscal formula acusación contra Héctor R. Torres, por un delito de Infracción a la ley núm. 63 aprobada en abril 28 de 1931 (*misdemeanor*) cometido de la manera siguiente:

"Porque el referido acusado allá en o por el día 22 de septiembre de 1937, y en el pueblo de Adjuntas, que forma parte del Distrito Judicial de Ponce, P. R., voluntaria e ilegalmente tenía para la venta, Licor de Hidróxido (Agua de Cal) adulterado, consistente la adulteración en que siendo dicho artículo una droga de nombre reconocido por la Farmacopea de los Estados Unidos de América, difería en la fecha de la investigación de este caso, de la norma de fuerza, calidad o pureza determinada por la Farmacopea de los Estados Unidos de América, pues en vez de contener la referida agua de cal (Lime Water) 0.14 Gm. en 100 c.c. a 25C., que es lo que determinan los ensayos prescritos en dicho formulario oficial, solamente contenía 0.0834 GMS. Ca (OH) 2 en 100 c.c., sin que este hecho o norma se hiciera constar en el rótulo del envase donde el acusado tenía dicho artículo."

Las secciones 2(*a*)(1) y 4 de la ley núm. 63 de 1931 disponen lo siguiente:

"Sección 2.—Para los fines de esta Ley, todo artículo se considerará adulterado:

"(*a*) En las drogas:

"(1) Si se vende bajo un nombre reconocido por la Farmacopea de los Estados Unidos o el Formulario Nacional y difiere de la norma de fuerza, calidad o pureza expresada en los ensayos que constan en esos dos formularios oficiales, en la época de la investigación; Disponiéndose, que ninguna droga descrita en ambos formularios se considerará adulterada, *si se expresa claramente otra norma en el rótulo, aunque ésta difiera de la oficial de aquellos dos formularios.*" (Bastardillas nuestras.)

"*       *       *       *       *       *       *

"Sección 4.—Toda persona que fabricare, vendiere, ofreciere o tuviere en venta, o que transportare o almacenare alimentos o *drogas adulterados o falsamente rotulados*, dentro de los términos expresados en esta Ley, será culpable de delito menos grave (*misdemeanor*) y será castigada con una multa no menor de veinticinco (25) dólares ni mayor de cien (100) dólares; Disponiéndose, que la reincidencia aparejará además la revocación de la licencia.

"En todos los casos por infracción a las disposiciones de esta Ley, tendrán jurisdicción original para conocer de dichas infracciones las cortes de distrito de Puerto Rico."

Comparada la acusación con los términos de estos artículos resalta la frivolidad del primer error alegado. Lo que la ley provee en cuanto a drogas se refiere, es que si se venden bajo un nombre reconocido por la Farmacopea de los Estados Unidos o el Formulario Nacional y difieren de la norma de fuerza, calidad, o pureza expresada en los ensayos que constan en dichos formularios, se considerarán adulteradas, pero que si se expresa claramente otra norma en el rótulo, distinta a la de estos formularios, no se considerarán adulteradas. De manera que al imputarse al acusado que tenía para la venta Licor de Hidróxido (Agua de Cal) adulterado porque dicho artículo es una de las drogas reconocidas por la Farmacopea de los Estados Unidos y difería en la fecha de la investigación de la norma de fuerza, calidad o pureza determinada por dicha farmacopea y especificarse en qué consistía la diferencia, la acusación aduce hechos' suficientes para imputar al acusado el delito cometido, según hemos resuelto en los casos de *El Pueblo* v. *Marín,* 54 D.P.R. 651 y *El Pueblo* v. *Ramos,* 56 D.P.R., 585 interpretando y aplicando esta misma ley. Es más, la acusación en el caso de autos contiene la alegación adicional, no alegada en dichos casos, de que la diferencia en la norma no se hizo constar en el rótulo de la droga que el acusado tenía para la venta. No se cometió el primer error.

En cuanto al segundo, hemos examinado. cuidadosamente la evidencia aportada por las partes en la vista del

caso y somos de opinión que es suficiente para sostener los hechos alegados en la acusación. Tanto en el primer examen de una de las muestras tomadas al acusado, como en el examen, de comprobación verificado posteriormente, con asistencia del perito nombrado por dicho acusado, se demostró que el grado de fuerza del agua de cal era inferior en mucho de la norma establecida por la Farmacopea de los Estados Unidos y que dicho producto lo tenía el acusado para la venta en su farmacia. El hecho de que dicho grado de fuerza pudiera bajar debido al efecto del bióxido de carbono del aire en el agua de cal, al destaparse el envase cada vez que se despachaba dicho producto o por dejarse destapado negligentemente, según se probó, no exime de responsabilidad al acusado. Por el contrario, convenimos con la corte inferior cuando dice que el delito provisto en las secciones 2 y 4 de la ley núm. 63 de 1931, supra, se comete al tener para la venta una droga adulterada, sin que sea un elemento esencial del mismo el que se alegue o pruebe que el acusado voluntaria y maliciosamente la adulteró. Debemos presumir que el acusado en este caso, un farmacéutico, tenía que conocer el efecto del bióxido de carbono del aire en el agua de cal. A pesar de ese conocimiento, él mismo declaró que al ser ocupado en su farmacia el galón de agua de cal, estaba destapado (página 56 T. de E.) y que dicho galón a veces estaba tapado y a veces destapado, porque el muchacho que tenía en la farmacia era muy descuidado (página 58 T. de E.). Bien fuera por descuido o negligencia o porque al preparar el agua de cal no se utilizara la cantidad de cal necesaria para darle a la droga la fuerza requerida por la farmacopea, la prueba presentada sostiene las alegaciones de la acusación. Lo que tiende a garantizar la ley es que al venderse una droga al público éste la adquiera convencido de que contiene la norma establecida. previamente como necesaria para que produzca los efectos que la ciencia médica ha determinado. Se probó en este caso que el agua de cal se

utiliza principalmente para calcificar los huesos de los niños en casos de raquitismo. De ahí la importancia de que dicho producto al ofrecerse en venta, aún cuando su costo de preparación, según se demostró, sea bajo, y que, por lo tanto, no intervenga el elemento especulativo en su venta, sea puro y contenga la norma de fuerza requerida por la ley.

*Debe confirmarse la sentencia apelada.*